# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MANUEL WEBER                                          CIVIL ACTION

VERSUS                                               NO.  12-1575

WARDEN LYNN COOPER                                   SECTION "F"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Manuel Weber, is incarcerated in the Avoyelles Correctional

Center in Cottonport, Louisiana.[2]  On October 18, 2006, Weber was charged in a one-

count bill of information in the 22nd Judicial District Court for St. Tammany Parish,

along with co-defendants, Shantrell Boutrin and Debbie Weber, with theft by the

misappropriation or taking of property valued at more than $500.[3]  The Louisiana First

Circuit Court of Appeal summarized the facts of the case as follows:

> On August 11, 2006, Officer Rod West with the Slidell Police
> Department was off-duty working a supplemental job as a security guard
> for Dillard's in the Northshore Mall.  One of West's primary duties at
> Dillard's is theft deterrence.  While fulfilling his duties, West noticed
> defendant in the men's denim department with a woman, later identified as
> Shantrell Boutrin, and noted what he described as unusual behavior from
> the two.  Suspicious of their activities, West watched defendant and
> Boutrin, making eye contact with each of them.  Defendant had been
> carrying a large stack of jeans but, after making eye contact with West, put
> them back on the rack, made a loop around the store, and walked out to the
> parking lot with Boutrin in tow.
>
> West continued to watch defendant and Boutrin as they walked
> toward a pickup truck and met up with another woman.  All three then
> headed toward J.C. Penney, where they split up and entered through
> different doors.  A few minutes later, West saw defendant walk out of J.C.
> Penney carrying a box on his shoulder.  He placed the box in the bed of the
> truck and then went back into J.C. Penney.  Five to ten minutes later,
> defendant again walked out of J.C. Penney with a box that appeared to be
> identical to the first box.  He placed the second box in the truck and then
> changed from a brown t-shirt into a white one and went, yet again, into J.C.

---

[2]Rec. Doc. No. 5.

[3]St. Rec. Vol. 1 of 7.  Co-defendants Shantrell Boutrin and Debbie Weber pled guilty.

Penney. He then left the store without any merchandise that West could see, got into his truck, and drove away.

West contacted dispatch while he watched defendant coming and going from J.C. Penney and notified them of a possible theft in progress. Officer Bradford Hoopes responded to the call and stopped defendant as he was driving away from the mall. Hoopes explained to defendant that he had been detained on suspicion of theft and advised him of his Miranda [4] rights. After insuring that defendant understood his rights, Hoopes asked where he got the merchandise in the bed of the truck. Defendant first answered that he did not know where the merchandise came from. Hoopes riposted that an officer saw him carrying the merchandise from J.C. Penney to his truck, at which point defendant admitted to stealing the items, and Hoopes placed him under arrest.

An inventory of the merchandise revealed a gift card for $130.43 that defendant explained he got by returning stolen merchandise, four comforters valued between $250 and $325 each, and three George Foreman-type grills valued between $119 and $140. The total value of the stolen merchandise was $1,499.97.[5]

On August 6, 2008, following a hearing, the trial court denied Weber's motions to suppress the evidence and the confession.[6] Trial commenced on that same date and Weber was found guilty as charged.[7] On November 18, 2008, Weber was sentenced to five (5) years in prison with credit for time served.[8] On that same date, the State filed a

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

[5] State v. Weber, 2009-KA-1224, 2009 WL 5647223 (La. App. 1st Cir. 12/23/09); St. Rec. Vol. 3 of 7.

[6] St. Rec. Vol. 1 of 7, pp. 92-107.

[7] St. Rec. Vol. 2 of 7, p. 218.

[8] Id. at pp. 222 and 224.

multiple bill of information and Weber pled not guilty to being a third felony offender.[9] On March 3, 2009, a multiple offender hearing was held, after which Weber was found to be a third-felony offender.[10]  On that same date, after setting aside Weber's original five-year sentence, the trial court sentenced him as a third felony offender to 20 years in prison at hard labor, without benefit of probation or suspension of sentence but with credit for time served, to run consecutively with any other sentences.[11]

On August 3, 2009, Weber's appointed counsel filed an appeal.  Counsel challenged the sufficiency of the evidence to support the verdict and argued that Weber's sentence was excessive.[12]  On October 13, 2009, Weber filed a supplemental pro se brief in the state appellate court, arguing that there was insufficient evidence to support his conviction and his multiple offender adjudication.[13]  On December 23, 2009, the Louisiana First Circuit Court of Appeal affirmed Weber's conviction, habitual offender adjudication and sentence.[14]

---

[9]Id. at pp. 225-27.

[10]Id. at 229-69.

[11]Id. at pp. 271-74.

[12]St. Rec. Vol. 6 of 7, Appeal Brief, 2009-KA-1224, 08/03/09.

[13]Id., Supplemental Pro Se Brief, 2009-KA-1224, 10/13/09.

[14]State v. Weber, 2009-KA-1224, 2009WL 5647223 (La. App. 1st Cir. 2009); St. Rec. Vol. 3 of 7.

On or about January 26, 2010, Weber filed a writ application in the Louisiana Supreme Court, asserting the same claims raised in his supplemental pro se brief in the state appellate court.[15]  On September 17, 2010, the Louisiana Supreme Court denied Weber's writ application without reasons.[16]

Weber's conviction became final 90 days later, on December 16, 2010, when he did not file a writ application with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir. 1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

On October 4, 2010, Weber filed an application for post-conviction relief in the state trial court.[17]  Weber raised the following claims:  (1) He was denied his right to effective assistance of counsel.  (2) There was insufficient evidence to support his conviction.  (3) There was insufficient evidence to support his multiple offender adjudication.  On March 4, 2011, the state trial court denied post-conviction relief.[18]

---

[15]St. Rec. Vol. 5 of 7, Original Application for Writ of Certiorari, 2010-KO-0174 (signed 01/26/10).

[16]State v. Weber, 45 So.3d 1040 (La. 2010).  St. Rec. Vol. 4 of 7, Supreme Court Opinion, 2010-KO-0174, 09/17/10.

[17]St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief (signed 10/4/10).

[18]St. Rec. Vol. 4 of 7, District Court Order, signed 03/04/11.

On March 22, 2011, Weber filed a "Writ of Review" with the Louisiana First Circuit Court of Appeal.[19] In his writ application, Weber asserted the following claims: (1) The trial court erred in denying his post-conviction application without holding an evidentiary hearing. (2) The trial court erred in denying his ineffective assistance of counsel claim. On July 5, 2011, the Louisiana First Circuit denied Weber's writ application without reasons.[20]

On July 20, 2011, Weber filed a "Writ of Certiorari-Review" with the Louisiana Supreme Court asserting that he received ineffective assistance of counsel.[21] On April 20, 2012, the Louisiana Supreme Court denied Weber's writ application without reasons.[22]

II.     FEDERAL HABEAS PETITION

On June 12, 2012, the clerk of the United States District Court for the Middle District of Louisiana filed Weber's petition for federal habeas corpus relief in which he raises the following grounds for relief: (1) The evidence was insufficient to support a finding of guilt on the charge of theft of property valued at $500 or more. (2) If counsel had been effective, the jury would have properly returned a verdict of guilt on the charge

---

[19]St. Rec. Vol. 6 of 7, Writ of Review, 2011-KW-0567, signed 03/22/11.

[20]St. Rec. Vol. 4 of 7, State v. Weber, 2011-KW-0567 (La. App. 1st Cir. 07/05/11).

[21]Id., Writ of Certiorari, 2011-KH-1674, signed 07/20/11.

[22]Id., State ex rel. Weber v. State, 85 So.3d 1260 (La. 2012), 2011-KH-1674.

of theft of property valued at <u>less</u> <u>than</u> $500.[23]  (3) The State submitted insufficient and inadmissible evidence to prove his habitual offender adjudication.[24]  On June 21, 2012, the case was transferred to this court pursuant to 28 U.S.C. § 2241(d) because Weber's conviction arose from a state court located within the Eastern District of Louisiana.[25]  On July 2, 2012, the clerk of this court filed Weber's supplemental petition for federal habeas corpus relief  in which he asserts the same claims raised in his original petition.[26]  The State filed a response in opposition to Weber's petition conceding timeliness and exhaustion, but asserting that Weber's claims are without merit.[27]

---

[23]In his original habeas petition, Weber combines claims (1) and (2).

[24]Rec. Doc. No. 1.  While Weber's challenge to his habitual offender adjudication is framed in terms of ineffective assistance of counsel, the only allegation of ineffectiveness is counsel's failure at trial to secure a conviction on a lesser offense.

[25]Rec. Doc. No. 3.  28 U.S.C. § 2241(d) provides:
> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.  The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

[26]Rec. Doc. No. 5.  In his supplemental petition, Weber lists three claims: (a) insufficient evidence to support his conviction, (b) ineffective assistance of counsel at his trial and (c) ineffective assistance of counsel at his habitual offender adjudication.

[27]Rec. Doc. No. 15.

III.   GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[28] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Weber's petition, which, for reasons discussed below, is deemed filed in this federal court on June 7, 2012.[29]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (C). The State concedes and I find that

---

[28]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[29]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Weber dated his signature on the petition on June 7, 2012. Rec. Doc. No. 1, p. 12. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing.

Weber's habeas petition is timely, the claims are exhausted, and none appear to be in procedural default. The State argues, however, that Weber's claims are without merit.

IV.  STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (C).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.    INSUFFICIENT EVIDENCE (CLAIM 1)

Weber admits that he specifically intended to steal two "George Foreman-type grills" worth less than $300.  Weber does not deny that he carried the grill boxes out of J.C. Penney and placed them in the bed of a pickup truck.  However, Weber contends the evidence was insufficient to support a finding that he specifically intended to take <u>all</u> of the merchandise contained in the pickup truck, and that the evidence was insufficient to support the jury's finding that he was guilty of taking merchandise valued at $500 or more.  On federal habeas review, an insufficient evidence claim presents a mixed question of law and fact.  <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008); <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  <u>Id</u>., 443 U.S. at 319; <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008); <u>Williams v. Cain</u>, 408 Fed. Appx. 817, 821 (5th Cir. 2011).  Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  <u>Perez</u>, 529 F.3d at

594 (citing Jackson, 443 U. S. at 324 n. 16).  The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence

determination, but rather whether it made a rational decision . . . .'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

Weber was charged with and convicted of theft of property valued at $500 or more. Theft is defined in La. Rev. Stat. § 14:67(A) as follows:

> A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

Theft is a specific intent crime. State v. Johnson, 2012 WL 3855179, *3 (La. App. 4th Cir. 09/05/12).[30] Specific intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. §14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)); State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989).

---

[30]At trial, the jury was instructed:
[I]n order to find this defendant guilty as charged you must find:
(1) The defendant misappropriated or took property belonging to J.C. Penney; and
(2) The value of the property was $500 or more; and
(3) The misappropriation or taking was without the consent of J.C. Penney; and
(4) The defendant had a specific intent to deprive the owner permanently of the property.
St. Rec. Vol. 2 of 7, p. 210.

In addition, Louisiana law provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. Rev. Stat. § 14:24; accord, <u>State v. Hinkel</u>, 2011 WL 2135193, *3 (La. App. 1st Cir. 2011) ("A principal to the crime of theft is held culpable for the entire value of the merchandise.") (citing <u>State v. Coleman</u>, 829 So.2d 468, 472 (La. App. 5th Cir. 9/18/02)).[31]

The punishment for a theft conviction depends upon the value of the thing taken. At the time of Weber's trial, La. Rev. Stat. § 14:67(B) (1), (2) and (3) provided in pertinent part:

> (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
> (2) When the misappropriation or taking amounts to a value of three hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.

---

[31]At trial, the jury was instructed: "All persons concerned in the commission of a crime are principals and are guilty of the crime charged if, whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." St. Rec. Vol. 2 of 7, p. 208.

(3) When the misappropriation or taking amounts to less than a value of three hundred dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than one thousand dollars, or both.[32]

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight of evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932.

In support of his insufficient evidence claim, Weber relies on the testimony of Officer Rodney West, one of two witnesses who testified at trial. Officer West, who was working a security detail at Dillard's, witnessed Weber and a female companion acting suspiciously. He followed them through the shopping mall and saw them go outside to a red pickup truck where they met a second woman. All three returned to the shopping

---

[32]In 2010, La. Rev. Stat. 14: 67(B)(1) was amended to provide that if the property taken is valued at one thousand five hundred dollars or more, the offender shall be imprisoned for not more than ten years. Section (B)(2) was amended to provide that if the property taken is valued at five hundred dollars but less than one thousand five hundred, the offender shall be imprisoned for not more than five years. The fines associated with violations of Sections (B)(1) and (2) remained the same. Section (B)(3) was amended to provide that if the property taken is valued at less than five hundred dollars, the offender shall be imprisoned for not more than six months and fined not more than two thousand dollars, or both. Although Weber was charged with theft of property valued at five hundred dollars or more, the trial court instructed jurors regarding the lesser offenses set forth under La. Rev. Stat. § 14:67(B)(2) and (3). St. Rec. Vol. 2 of 7, pp. 210-12.

mall, entering J.C. Penney. Once they had entered the mall, West went to the pickup truck, looked inside the cab, and saw comforters in their original packaging. West left the truck, alerted other officials, and subsequently witnessed Weber carry two boxes from J.C. Penney and place them in the bed of the pickup truck.[33] Weber then attempted to drive away but was detained before he could leave the parking lot.[34] West observed Weber's female companions exit the mall, then go back inside when they saw Weber being questioned by police.[35] West testified that upon returning to the truck, he heard Weber state that the merchandise was stolen and that the two women had nothing to do with it.[36] West later clarified that Weber admitted that he stole the merchandise.[37]

Weber points to Officer West's testimony that he saw Weber take two boxes from J.C. Penney and place them in the back of the pickup truck.[38] Weber argues that West's testimony shows that it was only the two grills that he stole, nothing more.[39] Weber also relies on Officer West's testimony that he heard Weber state that "the two females had

---

[33]St. Rec. Vol. 2 of 7, pp. 160-64.

[34]Id. at pp. 164 and 172.

[35]Id. at p. 166. West tracked down the women inside the mall.

[36]Id. at pp. 166-67.

[37]Id. at pp. 170-72

[38]Id. at pp. 163-64.

[39]Rec. Doc. No. 1, p. 5.

16

nothing to do with it."[40]  Weber argues that West's testimony shows that he admitted to taking all the merchandise in the truck not because he did so but because he was "tak[ing] the heat for his female accomplices so they would not be prosecuted."[41]  Weber cites West's testimony that Weber's female accomplices fled when they saw Weber being interrogated by the police.[42]  Weber argues that West's testimony shows that his female accomplices feared arrest because they knew they had taken expensive merchandise, while Weber did not fear arrest and did not flee because he had not taken expensive merchandise.[43] Weber also argues that West's testimony conflicts with Officer Hoopes' testimony and shows that he did not take the comforters.[44]

Officer Hoopes, one of the police officers who prevented Weber from driving away, testified that Weber initially denied knowing anything about the goods in the truck he was driving.  However, when Weber was informed that an officer had observed him taking the goods to the truck, Weber admitted that he did take the merchandise, i.e., the grills and comforters.[45]

---

[40]St. Rec. Vol. 2 of 7, p. 167.

[41]Rec. Doc. No. 1, p. 6.

[42]St. Rec. Vol. 2 of 7, p. 166.

[43]Rec. Doc. No. 1, p. 8.

[44]Rec. Doc. No. 1, p. 5.

[45]St. Rec. Vol. 2 of 7, pp. 175-77.  Hoopes also stated that he saw three George Foreman-type grills in the bed of the truck.  St. Rec., Vol. 2 of 7, pp. 180-81.

Based upon the portion of the transcript he cites,[46] Weber appears to argue that West, contrary to Hoopes, did not think Weber took the comforters because he did not see Weber take the comforters. Instead, West was of the opinion that Weber was merely in possession of the stolen comforters. West testified:

Q. [Y]ou did not see him take the comforters?
A. No, I did not.
Q. So he was just in possession of the comforters. Is that fair to say?
A. Sure.
Q. But you didn't see him steal or take any comforters out of J.C. Penney?
A. No, comforters I did not see him steal.
Q. Do you know the value of these grills?
A. Individually, no. I know the total value of all the merchandise together.
Q. Does that include the comforters?
A. Yes.
Q. But you didn't see him take the comforters, did you?
A. No, I did not.
Q. Do you know what he's being charged with today?
A. Being charged with theft.
Q. Is he being charged with theft with possession of stolen property?
A. Not that I know of, no.
Q. Okay. So did Mr. Weber make any statements to you?
A. After we'd gotten back to the scene where he was stopped with the other two females, I was present when he did say that he stole the merchandise.
Q. That - - well, hold on a second. Because there's a difference from what your prior testimony was. You testified previously that he said the merchandise was stolen. Is that correct?
A. That is correct.
Q. Now you're changing your testimony to say that he stole the merchandise?

[46]Weber refers to transcript pages 238-39. Rec. Doc. No. 1, p. 5. These pages are bate-stamped 170-71.

A. Yes. Because he was trying to, for lack of a better term, take the heat for the other two females that were involved.

Q. So your changing your testimony?

A. No. He later on said that he stole the merchandise. And he was trying to basically get the females, I guess, eliminate them from being prosecuted in this.

Q. But that's different from what you testified before?

A. The wording isn't exact, correct.

Q. Because, I mean, you testified that he said that the merchandise was stolen. He didn't say he stole it. That's what your testimony was before. Now you're saying that he did admit to stealing it?

A. Yes, he did .[47]

For the following reasons, I find Weber's arguments are without merit. Officer West testified that he saw Weber take two grills, that Weber attempted to protect his female accomplices and that he saw Weber's female accomplices flee into the mall when they saw police questioning Weber. Weber's claims that West's testimony proved only that he took two grills, admitted to taking all the merchandise because he was protecting his female accomplices, and his female accomplices fled because they were guilty of taking the expensive merchandise, are far-fetched inferences at best. Drawing inferences from evidence offered at trial is the exclusive province of the jury. Jackson, 443 U.S. at 319; West v. Nabors Drilling USA, Inc., 330 F.3d 379, 384 (5th Cir. 2003) (drawing inferences from the evidence is within the province of the jury) (citation omitted); Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc., 293 F.3d 912,

---

[47]St. Rec. Vol. 2, pp. 170-71.

918 (5th Cir. 2002) (same). In this case, the jury acted entirely within its lawful province in apparently rejecting the inferences defendant suggests it should have drawn and concluding instead that Weber was a principal in the theft of all of the recovered merchandise.

There is no merit to Weber's claim that Officer West's testimony, in contrast to Officer Hoopes' testimony, showed that he did not take the comforters. First, to the extent such a conflict existed, it is within the sole province of the jury to weigh conflicting evidence, and the jury's judgment will not be second-guessed in the absence of a finding that a reasonable juror could not reconcile the conflicting testimony in favor of the prosecution. United States v. Zeno, 2012 WL 5278729, *2 (5th Cir. 2012); Laxton v. Gap, Inc., 333 F.3d 572, 585 (5th Cir. 2003). In this case, even assuming that Weber's characterization of West's testimony is correct, a reasonable juror could easily reconcile any presumed conflict in favor of the prosecution based upon Hoopes' testimony. West's testimony, viewed as a whole, provides a more than reasonable basis upon which the jury could infer that Weber stole – rather than merely possessed – all the merchandise. When counsel sought to pin Officer West down as to what Weber said, West clearly testified that Weber admitted to stealing the merchandise.[48] Later, on redirect examination, when

---

[48]See supra at p. 19.

asked if Weber indicated that he stole the merchandise, West again responded affirmatively.[49]

Based upon the above, I find that a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could easily find that Weber had the specific intent to steal <u>all</u> the merchandise discovered in the truck. Thus, the state courts' rejection of Weber's claim that there was insufficient evidence to support his conviction is not contrary to Supreme Court precedent.

VI.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL (CLAIM 2)</u>

Weber argues that his counsel was ineffective at trial in the following respects. First, counsel failed to establish that the pickup truck where the stolen merchandise was stored belonged to his female accomplice, Debbie Weber. Second, counsel failed to establish that the recovered gift card was validated for Shantrell Boutrin, defendant's other female accomplice.  Third, counsel failed to have the trial court instruct jurors as to flight; <u>i.e.</u>, that his accomplices' attempt to avoid apprehension was indicative of their guilt.  <u>State v. Fuller</u>, 418 So.2d 591, 593 (La. 1982) (flight and attempt to escape apprehension indicates consciousness of guilt).  Weber asserts that counsel's errors in this regard were significant, since he did not attempt to avoid apprehension while his female accomplices did.  Fourth, Weber claims that counsel was ineffective in failing to

---

[49]St. Rec. Vol. 2, p. 172.

call the accomplices, Debbie Weber and Shantrell Boutrin, as witnesses, since they would have testified that Weber did not steal <u>all</u> the items in the truck, and they stole the comforters.[50] Finally, Weber complains that his counsel failed to investigate, interview witnesses, request surveillance videos and independently examine the evidence.

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting <u>prejudice</u>. <u>Strickland</u>, 466 U.S. at 697 (emphasis added). The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 687–88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir.1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more

---

[50]Weber has provided an affidavit from Debbie Weber in support of his petition, attesting that she took the bed comforters "without Manuel having any knowledge that they were stolen." St. Rec. Vol. 4 of 7.

likely than not altered the outcome in the case.'  It is not enough under <u>Strickland</u>,

however, 'that the errors had some conceivable effect on the outcome of the proceeding.'

" <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir.1994) (quoting <u>Strickland</u>, 466 U.S. at

693).

On habeas review, the United States Supreme Court has recently clarified that,

under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom." <u>Harrington v. Richter</u>, _ U.S. _, 131 S.Ct. 770, 788

(2011).  The <u>Harrington</u> Court went on to recognize the high level of deference owed to

a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within

the wide range of reasonable professional assistance because it is all too easy to conclude

that a particular act or omission of counsel was unreasonable in the harsh light of

hindsight." <u>Bell v. Cone</u>, 535 U.S. 685, 697 (2002) (citing <u>Strickland</u>, 466 U.S. at 689).

A "'conscious and informed decision on trial tactics and strategy cannot be the basis for

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)); see also Jones, 287 F.3d at 331 ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." (quotation omitted)); Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008) (same). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). The question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

I find that Weber was not prejudiced and his counsel did not provide constitutionally ineffective assistance by failing to establish that the pickup truck was owned by Debbie Weber. Officer West testified three times that defendant was driving the pickup truck containing the stolen merchandise.[51] Defendant had control of the truck and the fact that he did not own it was irrelevant. Similarly, the fact that the gift card was

---

[51]St. Rec. Vol. 2 of 7, pp. 164, 168 and 172.

"validated" for Shantrell Boutrin was likewise irrelevant. The gift card, valued at less than $150.00, was superfluous for the purpose of proving defendant guilty of taking property valued at $500 or more. I also find that counsel did not perform deficiently in failing to seek a jury charge providing that a suspect's flight is indicative of guilt. Such a charge would arguably have hurt Weber's defense since the evidence reflected that Weber did attempt to flee the scene. West testified that he ordered the police units to move in when he saw Weber driving away.[52] Hoopes similarly testified that he moved in to stop Weber from driving away.[53]

Weber's claim that counsel was ineffective in failing to call Debbie Weber and Shantrell Boutrin as witnesses is also without merit. Weber claims that if Debbie Weber and Shantrell Boutrin had been called, they would have testified that Weber did not steal all the merchandise in the truck and that they had pled guilty, thereby taking responsibility for taking items worth $500 or more. The state district court, in its post-conviction proceedings, properly rejected Weber's claim in this regard, reasoning that even if Weber's claims were true, their testimony would not have absolved Weber of guilt. "There were still facts and reasonable inferences from those facts that established that Weber was a principal to the theft venture."[54]

---

[52]Id. at p. 164.

[53]Id. at p. 174.

[54]St. Rec. Vol. 4 of 7 (Order dated 03/04/11).

"'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.' " <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir.2003) (quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir.1978)). " 'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.' " <u>Williams v. Cockrell</u>, 31 Fed. Appx. 832 (5th Cir.2002) (quoting <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir.1997)).

Substantial evidence showed that Weber was a principal to the theft venture in concert with his accomplices Debbie Weber and Shantrell Boutrin. Even if Weber's two female accomplices had testified that they took the comforters, it would not have absolved Weber of guilt in participating as a principal in their concerted operation to steal <u>all</u> of the stolen merchandise.

As to Weber's claims that his counsel failed to conduct interviews, investigate, request surveillance tapes and independently examine the evidence, Weber presents nothing but his self-serving allegations to show that counsel did not make such efforts. The record does not demonstrate that counsel acted outside acceptable trial strategy within the focus of the case and the defense he provided. As discussed above, counsel strenuously cross-examined Officer West as to the fact that he only actually witnessed Weber take two relatively inexpensive grills and that Weber was merely guilty of

possessing – not stealing – the other, more expensive merchandise. The fact that counsel's strategy and argument in this regard was not successful and that the jury reasonably accepted the prosecution's interpretation of the theft does <u>not</u> render defense counsel's performance constitutionally defective. Thus, the state courts' rejection of Weber's claim that counsel was ineffective at trial was not contrary to Supreme Court precedent. Weber is not entitled to federal habeas corpus relief on this ground.

## VII.  INEFFECTIVE ASSISTANCE OF COUNSEL AT HABITUAL OFFENDER ADJUDICATION (CLAIM 3)

Weber initially argues that his counsel was also ineffective at his habitual offender hearing as a result of his ineffectiveness at trial in that Weber claims that his counsel was ineffective in failing to obtain a verdict of guilty to a lesser charge. He seems to argue that if his counsel had succeeded in obtaining a verdict as to a lesser charge, then Weber would have faced a shorter sentence. As discussed above, however, his counsel was <u>not</u> ineffective at trial. Thus, Weber cannot conceivably rely on such an argument in an effort to blame counsel for the sentence he received as a multiple offender.

Weber also argues that his counsel was ineffective because hearsay evidence was admitted in violation of his right to cross-examination.[55]  Based upon his transcript citations, Weber appears to be objecting to a "pen pack probation report" accepted into evidence at his multiple offender hearing and used to support his habitual offender

---

[55]The instant claim represents a compilation of the claims which Weber has numbered 1 and 5. Rec. Doc. No. 1, p. 10.

adjudication. The report was submitted via the affidavit of Ella Peterson, the custodian of records for the Louisiana Department of Public Safety and Corrections. The affidavit was "borne under a notarial act notarized by Rhonda Z. Weldon, as an ex-officio notary of the Department of Public Safety and Corrections."[56]

The state court transcript reflects that contrary to Weber's suggestion, counsel strenuously objected to the admission of this evidence. His argument in this regard extended to seven (7) transcript pages.[57] The fact that his efforts failed to persuade the trial judge that the evidence was inadmissible does not render his performance ineffective in the Sixth Amendment sense. See Baker v. United States, 2011 WL 3841690, *13 (E.D. Va. 2011) ("record shows . . . counsel effectively advocated on petitioner's behalf . . . [t]hus, counsel's actions were effective notwithstanding their lack of success").

Further, a defendant has no right to confrontation or cross-examination at the sentencing phase of his proceedings. Hearsay evidence is admissible in such proceedings. See Williams v. People of State of New York, 337 U.S. 241, 246 (1949) (sentencing judge can exercise wide discretion in the sources and types of evidence used to determine punishment; out-of-court affidavits have frequently been used); United States v. Beydoun, 469 F.3d 102, 108 (5th Cir. 2006) (officer's hearsay testimony regarding conversations with co-conspirator was admissible at defendant's sentencing; right to

---

[56]St. Rec. Vol. 2 of 7, pp. 245-46.

[57]Id. at pp. 246-52.

confront witnesses does not apply to sentencing proceedings); <u>Szabo v. Walls</u>, 313 F.3d 392, 398 (7th Cir. 2002) (transcripts of witnesses' testimony admissible at sentencing; confrontation clause applies through the finding of guilt, but not to sentencing) (citing <u>Williams</u>, 337 U.S. 241).

In <u>United States v. Cantellano</u>, 430 F.3d 1142, 1146 (11th Cir. 2005), <u>cert</u>. <u>denied</u>, 547 U.S. 1034 (2006), the issue was whether hearsay evidence at the defendant's sentencing hearing was admissible to prove his prior convictions. The court determined that the evidence was admissible, stating: "The right of confrontation is not a sentencing right. The sentencing court did not err . . . when it considered hearsay evidence to prove Cantellano's prior convictions." <u>Id</u>.

In <u>Hill v. Secretary, Dept. Of Corrections</u>, 2012 WL 1020431, *6 (N.D. Fla. 02/28/12), <u>adopted</u>, 2012 WL 1059168 (N.D. Fla. 03/27/12), the State submitted hearsay evidence in the form of "a letter from the Florida Board of Executive Clemency" providing that the defendant had not been granted clemency on any of her prior convictions. The court found the hearsay evidence admissible for the purpose of proving defendant's prior convictions, stating:

> The Supreme Court repeatedly has held that hearsay statements and documents are admissible at sentencing proceedings. <u>See</u>, <u>e.g.</u>, <u>Williams v. New York</u>, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); <u>Williams v. Oklahoma</u>, 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). Furthermore, the Eleventh Circuit recognizes that hearsay evidence may be considered at sentencing in proving a defendant's prior

convictions.  U.S. v. Cantellano, 430 F.3d 1142, 1146 (11th Cir.2005).
That is exactly what occurred at Petitioner's sentencing.

Hill, 2012 WL 1020431 at *6.

The admission of the "pen pack probation report" to prove Weber's prior convictions in connection with his habitual offender adjudication was not contrary to Supreme Court precedent.  Weber's claim in this regard is without merit.

Weber also argues that defense counsel was ineffective in allowing him to be adjudicated a multiple offender because the State failed to prove the validity of his prior convictions.[58]  Specifically, he argues that the State failed to produce transcripts of the proceedings relevant to his prior out-of-state convictions, thereby failing to show whether he was properly Boykinized and whether his prior convictions arose from guilty pleas or convictions at trial.[59]  The multiple bill hearing transcript reflects that defense counsel filed a motion to quash the State's evidence, arguing that the State failed to prove Weber's multiple offender status due to the State's failure to produce transcripts showing

---

[58]Weber's prior convictions consisted of a 1989 involuntary manslaughter conviction and 1991 purse snatching, credit card fraud or financial transaction fraud convictions in Georgia. St. Rec. Vol. 2 of 7, p. 239, 269.  There was no question that Weber was one and the same person with these prior convictions.  Deputy Michael Futch, a fingerprint identification expert, took fingerprints of Weber on the day of his multiple bill hearing and compared them with the fingerprints taken in connection with the prior Georgia convictions and testified that the fingerprints came from one and the same person, Manual Weber.  St. Rec. Vol. 2 of 7, pp. 236-45.

[59]The instant claim represents a compilation of the claims which Weber has numbered 2-4. St. Rec. Doc. No. 1, p. 10.

that Weber was properly <u>Boykinized</u> and was represented by counsel.[60]  Thus, defense counsel clearly attempted to place this circumstance at issue.  As noted above, the fact that counsel's efforts were unsuccessful in that the trial court denied counsel's motion to quash, does not render his representation constitutionally ineffective.  <u>See</u> <u>Baker</u>, <u>supra</u> at p. 28.

Furthermore, this court cannot now consider any alleged violations that may have occurred in the prior cases.  The United States Supreme Court has held that federal habeas corpus relief is not available when a petitioner challenges a current sentence on the ground that it was enhanced based on allegedly unconstitutional prior convictions for which the petitioner is no longer in custody.  <u>Lackawanna County District Attorney v. Coss</u>, 532 U.S. 394, 400-401 (2001).  Therefore, Weber cannot challenge his current sentence in this court by claiming that his 1989 and 1991 convictions were not constitutionally sound.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of Supreme Court precedent.  Weber is not entitled to federal habeas corpus relief.

---

[60]St. Rec. Vol. 2 of 7, p. 255-68. Defense counsel, upon careful examination of the State's documents, later acknowledged that the State had shown that Weber was represented by counsel in his prior proceedings.  <u>Id</u>. at pp. 267-68.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Manual Weber for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[61]

New Orleans, Louisiana, this ___15th___ day of January, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[61]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.